IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

KARIN MARIE KENDRICK          :
                              :
                              :
    v.                        :   Civil No. CCB-10-2207
                              :
                              :
HON. COLLEEN A. CAVANAUGH, et al.  :
                              :
                              :

## MEMORANDUM

Karin Marie Kendrick has sued Judge Colleen A. Cavanaugh and former-Judge Julie L. Ensor, of the Orphans' Court for Baltimore County; Grace G. Connolly, Register of Wills for Baltimore County; Sheriff R. Jay Fisher; Officers John and Jane Doe; and the State of Maryland. Ms. Kendrick alleges that she was falsely arrested and imprisoned in violation of her Fourth and Fourteenth Amendment rights and Maryland's Declaration of Rights. Now pending before the court is the defendants' motion to dismiss and the plaintiff's motion for leave to amend the complaint. The issues in this case have been fully briefed and no oral argument is necessary. *See* Local Rule 105.6 (D. Md. 2011). For the following reasons, the defendants' motion will be granted, and the plaintiff's motion will be denied.

## BACKGROUND

Ms. Kendrick, then a practicing attorney, was appointed as a co-personal representative of the Estate of Judith Kerr, a close personal friend, on March 4, 1999. After she failed to file timely administration of accounts for the Estate on multiple occasions and collected an improper legal fee for her services, the Orphans' Court for Baltimore County ordered Ms. Kendrick's

1

removal as a co-personal representative of the Estate on August 28, 2002. The Orphans' Court appointed Roland Schrebler, Esq., as the successor personal representative of the Estate, and ordered Ms. Kendrick to turn over the Estate's assets and financial records to Mr. Schrebler. The court also ordered Ms. Kendrick to file a third and final administration account with the court within 30 days of August 28, 2002. Instead of complying with the court's order, Ms. Kendrick appealed her removal as a representative of the Estate. Her removal was affirmed by both the Circuit Court for Baltimore County and the Court of Special Appeals of Maryland. Following the denial of her appeal by the Court of Appeals of Maryland on December 23, 2004, Ms. Kenderick was ordered to comply with the Orphans' Court's 2002 order.

On February 11, 2005, after Ms. Kendrick failed to turn over the Estate's assets and financial records and failed to file a final account with the court, Mr. Schrebler filed a petition to hold Ms. Kendrick in civil contempt. The Orphans' Court held a civil contempt hearing on May 10, 2005, which was continued on May 12, 2005. On June 2, 2005, the Orphans' Court held Ms. Kendrick in contempt of court for failing to comply with the court's 2002 orders and a May 10, 2005 order. Ms. Kendrick appealed the civil contempt finding to the Circuit Court for Baltimore County. On November 29, 2005, the Circuit Court affirmed that Ms. Kendrick was in contempt of court for failing to comply with the court's 2002 order, but also found that she was not in contempt of court for failing to comply with the court's May 10, 2005 order because of lack of notice. The Circuit Court therefore ordered Ms. Kendrick to file a final account of the Estate with the Orphans' Court within the next 30 days.

Although Ms. Kendrick attempted to file a correct third and final administration account on numerous occasions, her filings were repeatedly rejected for failing to adequately account for

all of the Estate's assets and liabilities. Consequently, on July 23, 2007, the Orphans' Court ordered that if Ms. Kendrick did not file an accurate revised third and final account and turn over any remaining Estate documents within 15 days of the order, the court would issue a body attachment to bring her before the court. Ms. Kendrick attempted to file a final account on August 6, 2007, but the filing was denied by the court as inadequate. The court therefore extended the deadline by which Ms. Kendrick had to file an accurate final account of the Estate to August 15, 2007. Ms. Kendrick failed to do so, and on August 24, 2007, the court issued a writ of body attachment to bring her before the court. On August 29, 2007, Ms. Kendrick was taken into custody at her home in Baltimore City. Because court had closed for the day, Ms. Kendrick was remanded to the custody of the Baltimore County Detention Center. The next day, the Orphans' Court informed Ms. Kendrick that she remained in contempt of court for failing to file a final account of the Estate as required by the court's 2002 order and that she would remain in custody until she complied. Ms. Kendrick was given access to her files and the court approved a final account drafted by her on August 30, 2007.

On March 11, 2008, the Maryland Court of Appeals held that Ms. Kendrick violated multiple rules of professional conduct in the handling of the Estate of Judith Kerr and suspended her indefinitely from the practice of law until she makes full restitution to the Estate. On August 11, 2010, Ms. Kendrick filed this action against the defendants under 42 U.S.C. § 1983 and the Maryland Declaration of Rights, seeking only monetary damages.

## **STANDARD OF REVIEW**

"[T]he purpose of Rule 12(b)(6) is to test the sufficiency of a complaint and not to resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Presley v. City of Charlottesville*, 464 F.3d 480, 483 (4th Cir. 2006) (internal quotation marks and alterations omitted) (quoting *Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999)). When ruling on such a motion, the court must "accept the well-pled allegations of the complaint as true," and "construe the facts and reasonable inferences derived therefrom in the light most favorable to the plaintiff." *Ibarra v. United States*, 120 F.3d 472, 474 (4th Cir.1997). "Even though the requirements for pleading a proper complaint are substantially aimed at assuring that the defendant be given adequate notice of the nature of a claim being made against him, they also provide criteria for defining issues for trial and for early disposition of inappropriate complaints." *Francis v. Giacomelli*, 588 F.3d 186, 192 (4th Cir. 2009). To survive a motion to dismiss, the factual allegations of a complaint "must be enough to raise a right to relief above the speculative level, . . . on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal citations and alterations omitted). Thus, the plaintiff's obligation is to set forth sufficiently the "grounds of his entitlement to relief," offering more than "labels and conclusions." *Id.* (internal quotation marks and alterations omitted). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged-but it has not 'show[n]'-'that the pleader is entitled to relief.'" *Ashcroft v. Iqbal*, -- U.S. --, 129 S. Ct. 1937, 1950 (2009) (quoting Fed. R. Civ. P. 8(a)(2)).

# ANALYSIS

## A.   Absolute Immunity[1]

Ms. Kendrick's claims against Judge Cavanaugh, in her individual capacity, is barred by the doctrine of absolute immunity. The Supreme Court has long recognized that it is "a general principle of the highest importance to the proper administration of justice that a judicial officer, in exercising the authority vested in him, [should] be free to act upon his own convictions, without apprehension of personal consequences to himself." *Stump v. Sparkman*, 435 U.S. 349, 355 (1978) (alteration in original) (quoting *Bradley v. Fisher*, 13 Wall. 335, 347 (1872)). The determination of whether a judge is immune from a suit depends on "whether at the time he took the challenged action he had jurisdiction over the subject matter before him." *Id.* at 356. A judge is entitled to absolute immunity even if the action he or she took "was in error, was done maliciously, or was in excess of his authority; rather, he will be subject to liability only when he has acted in the 'clear absence of all jurisdiction.'" *Id.* at 356-57.

Under Maryland law, the Orphans' Court "may conduct judicial probate, direct the conduct of a personal representative, and pass orders which may be required in the course of the administration of an estate of a decedent." Md. Code Ann., Est. & Trusts § 2-102(a), *see also* Md. Code Ann., Est. & Trusts § 2-101 (defining the word "court" to mean the "orphans' court" for purposes of the statute). The Orphans' Court also "has the same legal and equitable powers to effectuate its jurisdiction, punish contempts, and carry out its orders, judgments, and decrees as a court of record . . ." *Id.* at § 2-103. Here, Judge Cavanaugh ordered a body attachment against Ms. Kendrick pursuant to the finding that she was in contempt of court for failing to comply with

---

[1] Ms. Kendrick has acknowledged that defendant Ensor was no longer a judge on the Orphans' Court at the time of her alleged false arrest and imprisonment and appears to have abandoned her claims against former-Judge Ensor. (*See* Pl.'s Mot to Correct or Amend at 1.)

the court's 2002 order. Ms. Kendrick nonetheless argues that Judge Cavanaugh acted in the clear absence of all jurisdiction when she ordered the body attachment to bring her before the court.

Ms. Kendrick argues that because she appealed the contempt order to the Circuit Court for Baltimore County in 2005, the Orphans' Court was divested of its jurisdiction to punish her for contempt of court. Although the Circuit Court found that Ms. Kendrick was not in contempt of court for failing to comply with the Orphans' Court's May 2005 order, the Circuit Court concluded on de novo review that Ms. Kendrick was in contempt of court for failing to comply with the Orphans' Court's 2002 orders. The Orphans' Court's finding that Ms. Kendrick was in contempt of court for violating its 2002 orders was therefore never vacated. It was affirmed. Judge Cavanaugh therefore did not act in clear absence of all jurisdiction when she ordered the body attachment against Ms. Kendrick to obtain her compliance.

Ms. Kendrick also argues that Judge Cavanaugh is not entitled to absolute immunity because officers from the Baltimore County Sheriff's Office took her into custody at her home in Baltimore City, which is outside the territorial jurisdiction of the Sheriff's Office. Maryland law, however, allows a sheriff to serve court orders in a county other than the county of which he is sheriff. *See* Md. Code Ann., Cts. & Jud. Proc. § 2-301(b)(1). Moreover, even if the Baltimore County Sheriff's Office did not have the authority to enforce the Orphans' Court's order in Baltimore City, the subsequent improper enforcement of a court's order does not undermine the court's underlying jurisdiction to issue the order. Accordingly, Judge Cavanaugh is entitled to absolute immunity from the plaintiff's suit.[2]

---

[2] Ms. Kendrick also appears to argue that her civil contempt hearing was unfair because the judges who presided over her contempt hearing, including former-Judge Ensor, received donations for her election campaign from Mr. Schrebler's law firm. According to Ms. Kendrick, the judges were therefore required to recuse themselves from her case. Ms. Kendrick, however, never moved to recuse the judges from her case. Because she failed to raise the issue

## B. Absolute Quasi-Judicial Immunity

Ms. Connolly, Register of Wills, Sheriff Fisher, and Officers John and Jane Doe also are immune from the plaintiff's suit. Absolute quasi-judicial immunity extends to non-judicial officers "performing tasks so integral or intertwined with the judicial process that these persons are considered an arm of the judicial officer who is immune." *Bush v. Rauch*, 38 F.3d 842, 847 (6th Cir. 1994) (citation omitted). The basis for affording non-judicial officials absolute immunity is to avoid the "danger that disappointed litigants, blocked by the doctrine of absolute immunity from suing the judge directly [would] vent their wrath on clerks, court reporters, and other judicial adjuncts." *Sindram v. Suda*, 986 F.2d 1459, 1461 (D.C. Cir. 1993) (alteration in original) (quoting *Dellenbach v. Letsinger*, 889 F.2d 755, 763 (7th Cir. 1989)). Courts have therefore extended absolute immunity to protect, among others, clerks of court, law enforcement officers, and others who enforce court orders. *See, e.g.*, *Foster v. Walsh*, 864 F.2d 416, 417-18 (6th Cir. 1988) (holding the clerk of court to be absolutely immune for issuing an erroneous warrant pursuant to the court's order); *Henry v. Farmer City State Bank*, 808 F.2d 1228, 1238-39 (7th Cir. 1986) ("[P]olice officers, sheriffs, and other court officers who act in reliance on a facially valid court order are entitled to quasi-judicial immunity from suit.").

Here, Ms. Connolly, in her position as the Register of Wills,[3] issued the body attachment pursuant to a facially valid court order. Likewise, Sheriff Fisher and Officers John and Jane Doe also acted in reliance on a valid court order when they arrested Ms. Kendrick.

---

at her initial hearing, she cannot collaterally attack the fairness or impartiality of her civil contempt hearing through a § 1983 suit.

[3] The "register of wills" is the equivalent of the clerk of the court when an estate is being administered in equity. *See* Md. Code Ann, Est. & Trusts § 2-201(b).

They are therefore entitled to quasi-judicial immunity from Ms. Kendrick's suit. Accordingly, the plaintiff's claims against the defendants in their individual capacity will be dismissed.

### C. Sovereign Immunity

Ms. Kendrick's claims against the State of Maryland and the defendants in their official capacities also are barred. Under the Eleventh Amendment, a state, its agencies, and its departments are immune from suits in federal court brought by its citizens or citizens of a foreign nation. *See Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 100 (1984). Although Maryland has waived its sovereign immunity, subject to certain limitations, for suits brought in state court, *see* Md. Code Ann., State Gov't § 12-104(a)(1), it has not waived its immunity in federal court and has not consented to be sued. Moreover, because Ms. Kendrick is seeking retroactive damages only, not injunctive relief, the *Ex Parte Young* doctrine, *see* 209 U.S. 123 (1908), does not apply. Accordingly, the plaintiff's claims against the defendants in their official capacities and the State of Maryland will be dismissed.

### D. Motion for Leave to Amend

Also pending before the court is the plaintiff's motion to amend the complaint. "Disposition of a motion to amend is within the sound discretion of the district court." *Deasy v. Hill*, 833 F.2d 38, 40 (4th Cir. 1987) (citing *Foman v. Davis*, 371 U.S. 178, 182 (1962)). While Rule 15(a)(2) encourages the court to "freely give leave [to amend] when justice so requires," Fed. R. Civ. P. 15(a)(2), leave is not to be granted automatically. *Deasy*, 833 F.2d at 40. A court may properly deny a motion for leave to amend where such amendment would be futile. *Matrix Capital Mgmt. Fund, LP v. BearingPoint, Inc.*, 576 F.3d 172, 193 (4th Cir. 2009). Amendment of the complaint in this case would be futile because the defendants and the State of Maryland

are entitled to immunity from Ms. Kendrick's suit even under the proposed amended complaint.

The plaintiff's motion for leave to amend will therefore be denied.

A separate Order follows.

<u>July 14, 2011</u>  /s/
Date  Catherine C. Blake
United States District Judge